## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERDIGITAL COMMUNICATIONS, INC., a Delaware corporation, INTERDIGITAL TECHNOLOGY CORPORATION, a Delaware corporation, IPR LICENSING, INC., a Delaware corporation, and INTERDIGITAL HOLDINGS, INC., a Delaware corporation,<br><br>      Plaintiffs<br><br>     v.<br><br>ZTE CORPORATION, a Chinese corporation, and ZTE (USA) INC., a New Jersey corporation,<br><br>      Defendants. | C.A. No. 13-0009-RGA<br><br>**JURY TRIAL DEMANDED** |

### ANSWER AND AFFIRMATIVE DEFENSES AND
### COUNTERCLAIMS OF ZTE (USA) INC.

Defendant, ZTE (USA) Inc. ("ZTE (USA)") hereby submits this Answer with Counterclaims to the Complaint filed by Plaintiffs InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc., (collectively "InterDigital" or "the Plaintiffs") on January 2, 2013. ZTE (USA) responds as follows:

### THE PARTIES

1.    ZTE (USA) admits on information and belief the allegations contained in paragraph 1.

2.    ZTE (USA) admits on information and belief the allegations contained in paragraph 2.

3.      ZTE (USA) admits on information and belief the allegations contained in paragraph 3.

4.      ZTE (USA) admits on information and belief the allegations contained in paragraph 4, except the allegations in footnote 1, for which ZTE (USA) lacks knowledge or information sufficient to form a belief about the truth thereof, and therefore denies the same.

5.      ZTE (USA) admits the allegations of paragraph 5.

6.      ZTE (USA) admits the allegations of paragraph 6.

## JURISDICTION AND VENUE

7.      ZTE (USA) admits that Plaintiffs purport to bring this action under 35 U.S.C. § 271 et seq.  ZTE (USA) further admits that this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

8.      ZTE (USA) does not contest venue in this District solely for the purposes of this case.  ZTE (USA) further does not contest that the Court has personal jurisdiction over ZTE (USA) solely for the purposes of this case.  All remaining allegations of paragraph 8 are denied.

9.      ZTE (USA) does not contest venue in this District solely for the purposes of this case.  ZTE (USA) further does not contest that the Court has personal jurisdiction over ZTE (USA) solely for the purposes of this case.  All remaining allegations of paragraph 9 are denied.

## THE PATENTS-IN-SUIT

10.     ZTE (USA) admits that Plaintiffs purport that there are three patents at issue in this action, that is, United States Patent Nos. 7,190,966 ("the '966 patent"), 7,286,847 ("the '847 patent"), and 7,941,151 ("the '151 patent").

11.     ZTE (USA) admits that the '966 patent appears to be entitled "Method and Apparatus For Performing An Access Procedure."  ZTE (USA) further admits the '966 patent appears to have been issued on March 13, 2007, naming inventors Fatih Ozluturk and Gary R.

2

Lomp.  ZTE (USA) lacks knowledge or information sufficient to form a belief as to whether InterDigital owns by assignment the entire right, title, and interest in and to the '966 patent, but ZTE (USA) admits that InterDigital is listed as the assignee on the face of the '966 patent.  ZTE (USA) admits that Exhibit A to the Complaint appears to contain a copy of the '966 patent.  ZTE (USA) denies that the '966 patent is valid and enforceable.

12.    ZTE (USA) admits that the '847 patent appears to be entitled "Method and Apparatus For Performing An Access Procedure."  ZTE (USA) further admits the '847 patent appears to have been issued on October 23, 2007, naming inventors Fatih Ozluturk and Gary R. Lomp.  ZTE (USA) lacks knowledge or information sufficient to form a belief as to whether InterDigital owns by assignment the entire right, title, and interest in and to the '847 patent, but ZTE (USA)  admits that InterDigital is listed as the assignee on the face of the '847 patent.  ZTE (USA) admits that Exhibit B to the Complaint appears to contain a copy of the '847 patent.  ZTE (USA) denies that the '847 patent is valid and enforceable.

13.    ZTE (USA) admits that the '151 patent appears to be entitled "Method and System For Providing Channel Assignment Information Used to Support Uplink And Downlink Channels."  ZTE (USA) further admits the '151 patent appears to have been issued on May 10, 2011, naming inventors Marian Rudolf, Stephen G. Dick, and Phillip J. Pietraski.  ZTE (USA) lacks knowledge or information sufficient to form a belief as to whether InterDigital owns by assignment the entire right, title, and interest in and to the '151 patent, but ZTE (USA) admits that InterDigital is listed as the assignee on the face of the '151 patent.  ZTE (USA) admits that Exhibit C to the Complaint appears to contain a copy of the '151 patent.  ZTE (USA) denies that the '151 patent is valid and enforceable.

## COUNT I
## INFRINGEMENT OF THE '966 PATENT

14.     ZTE (USA) reasserts its answers to paragraphs 1-13 above as if fully set forth herein.

15.     ZTE (USA) denies the allegations of paragraph 15.

16.     ZTE (USA) admits that InterDigital asserted patents against ZTE (USA) in Investigation Number 337-TA-800 before the U.S. International Trade Commission.   ZTE (USA) admits that it has received the Complaint.  ZTE (USA) denies the remaining allegations of paragraph 16.

17.     ZTE (USA) admits that at least some of the accused ZTE (USA) products identified by InterDigital to date are designed to be used in a 3G WCDMA system.  ZTE (USA) denies the remaining allegations in paragraph 17.

18.     ZTE (USA) denies the allegations in paragraph 18.

19.     ZTE (USA) denies the allegations in paragraph 19.

20.     ZTE (USA) denies the allegations in paragraph 20.

## COUNT II
## INFRINGEMENT OF THE '847 PATENT

21.     ZTE (USA) reasserts its answers to paragraphs 1-20 above as if fully set forth herein.

22.     ZTE (USA) denies the allegations in paragraph 22.

23.     ZTE (USA) admits that InterDigital asserted patents against ZTE (USA) in Investigation Number 337-TA-800 before the U.S. International Trade Commission.   ZTE (USA) admits that it has received the Complaint.  ZTE (USA) denies the remaining allegations of paragraph 23.

RLF1 8024574v.1

24.     ZTE (USA) admits that at least some of the accused ZTE (USA) products identified by InterDigital to date are designed to be used in a 3G WCDMA system.  ZTE (USA) denies the remaining allegations in paragraph 24.

25.     ZTE (USA) denies the allegations of paragraph 25.

26.     ZTE (USA) denies the allegations of paragraph 26.

27.     ZTE (USA) denies the allegations of paragraph 27.

## COUNT III
## INFRINGEMENT OF THE '151 PATENT

28.     ZTE (USA) reasserts its answers to paragraphs 1-27 above as if fully set forth herein.

29.     ZTE (USA) denies the allegations of paragraph 29.

30.     ZTE (USA) admits that it has received the Complaint.  ZTE (USA) denies the remaining allegations of paragraph 30.

31.     ZTE (USA) admits that at least some of the accused ZTE (USA) products identified by InterDigital to date are designed to be used in a 4G wireless communications system and to comply with the LTE standard.  ZTE (USA) denies the remaining allegations in paragraph 31.

32.     ZTE (USA) denies the allegations of paragraph 32.

33.     ZTE (USA) denies the allegations of paragraph 33.

34.     ZTE (USA) denies the allegations of paragraph 34.

## JURY DEMAND

35.     The allegations in paragraph 35 do not require a response.  ZTE (USA) demands a trial by jury on all issues so triable.

RLF1 8024574v.1

## PRAYER FOR RELIEF

36.     ZTE (USA) denies that InterDigital is entitled to any relief.

## AFFIRMATIVE DEFENSES

ZTE (USA) asserts the following affirmative and other defenses listed below.  ZTE (USA) reserves the right to seek to amend, modify, and/or expand these defenses and to take further positions that are consistent with the facts discovered in this case.

### First Affirmative Defense:
### Non-Infringement

1.      ZTE (USA) does not infringe any valid and enforceable claim of the Asserted Patents.  ZTE (USA) does not practice any asserted claims of the Asserted Patents.

### Second Affirmative Defense:
### Invalidity

2.      The asserted claims of the Asserted Patents are invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. §§ 101,102, 103, and/or 112.

### Third Affirmative Defense:
### Prosecution Laches

3.      InterDigital's claims are barred in whole or in part by delay in prosecuting the patent applications that matured into the Asserted Patents.

4.      One or more of the Asserted Patents claims benefit under 35 U.S.C. § 120 to an application having a purported filing date of more than ten years before the date InterDigital instituted this action.

5.      InterDigital, based on its representations that one or more of the Asserted Patents claim benefit under 35 U.S.C. § 120 to a series of continuation applications, could have claimed the subject matter now recited in the asserted claims of one or more of the Asserted Patents at any time since the respective, purported effective filing date(s) the Asserted Patent(s).

RLF1 8024574v.1

**Fourth Affirmative Defense:**
**Prosecution History Estoppel**

6.     By reason of acts, admissions, and statements before the USPTO made by or on behalf of applicants for the Asserted Patents during prosecution of the patent applications that matured into the Asserted Patents, InterDigital is estopped from claiming ZTE (USA) infringes one or more of the Asserted Patents.

**Fifth Affirmative Defense:**
**Patent Misuse**

7.     On information and belief, InterDigital is barred from asserting the Asserted Patents by the equitable doctrine of patent misuse.  InterDigital is a member of the relevant standards-setting organizations ("SSOs"), including the European Telecommunications Standardization Institute ("ETSI"), the 3rd Generation Partnership Project ("3GPP"), and the International Telecommunications Union ("ITU").  The  Intellectual Property Rights Policies ("IPR Policies") of these SSOs require each member to identify all patents the member holds that may be essential to compliance with a proposed technology standard and state whether it will license such patents on fair, reasonable and non-discriminatory ("FRAND") terms and conditions.  Having declared to the SSOs that the Asserted Patents are essential to standards, InterDigital failed to comply with their obligations under the IPR Policies, including by failing to propose FRAND terms for the Asserted Patents it claims are essential and by seeking injunctive and/or exclusionary relief against ZTE (USA), a willing licensor.

**Sixth Affirmative Defense:**
**Breach of Contract**

8.     InterDigital breached its undertakings and obligations to SSOs including ETSI, 3GPP, and ITU, as well as to ZTE (USA) as beneficiary of such undertakings and obligations, by seeking to enjoin or exclude ZTE (USA) from importing or selling products that allegedly

practice the Asserted Patents, and by failing to offer and grant FRAND terms and conditions for licensing the Asserted Patents.

**Seventh Affirmative Defense:**
**Equitable and Promissory Estoppel**

9.     InterDigital's claims are barred in whole or in part based on equitable and/or promissory estoppel arising from InterDigital's participation in SSOs including ETSI, 3GPP, and ITU, InterDigital's failure to propose FRAND terms for the Asserted Patents it claims are essential as required by the SSOs' IPR Policies, ZTE (USA)'s reliance on InterDigital's obligation to adhere to the IPR Policies, and ZTE (USA)'s detriment as a result of InterDigital's failure to honor its obligations.

**Eighth Affirmative Defense:**
**Unclean Hands**

10.     The Asserted Patents are void and unenforceable by reason of the equitable doctrine of unclean hands based (among other things) on InterDigital's participation in SSOs including ETSI, 3GPP, and ITU, InterDigital's failure to comply with its commitments and obligations under the IPR Policies of these SSOs, InterDigital's efforts to enjoin or exclude ZTE (USA) from importing and selling products that allegedly practice the Asserted Patents, and InterDigital's refusal to offer FRAND terms for the Asserted Patents it claims are essential.

**Ninth Affirmative Defense:**
**Express or Implied License**

11.     InterDigital is barred from asserting the Asserted Patents because ZTE (USA) is expressly or impliedly licensed to practice the Asserted Patents as a result of InterDigital's participation in SSOs including ETSI, 3GPP, and ITU, its commitments and obligations under the IPR Policies of these SSOs to license the Asserted Patents according to FRAND terms and

RLF1 8024574v.1

conditions, and ZTA (USA)'s willingness to enter into a license on FRAND terms and conditions.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, ZTE (USA) pleads the following counterclaims against Plaintiff/Counterclaim Defendants InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc. (collectively "InterDigital").

## NATURE OF THE ACTION

1.      ZTE (USA) brings this action to enforce contractual commitments made by InterDigital to license on Fair, Reasonable and Non-Discriminatory ("FRAND") terms patents that InterDigital claims are essential to various 3G and/or 4G wireless standards.  In breach of those commitments, InterDigital has failed to offer FRAND licenses to ZTE (USA).

2.      In further breach, InterDigital filed a complaint on July 26, 2011 which initiated an investigation before the United States International Trade Commission, Inv. No. 337-TA-800 (the "800 ITC Proceeding").  InterDigital filed another complaint on January 2, 2013, initiating a new investigation before the ITC, docket no. 337-2929, which has not been assigned an investigation number yet (the "New ITC Proceeding").  Through these proceedings (collectively, the "ITC Proceedings"), InterDigital seeks to harm irreparably ZTE (USA)'s substantial business by enjoining importation of its products, and seeks to extract unfair and unreasonable license terms.  Yet, by virtue of its FRAND commitments, InterDigital effectively agreed to forego injunctive or exclusionary relief against parties willing to agree to FRAND license terms with respect to valid and essential patents they use, as ZTE (USA) is willing to do.

3.       ZTE (USA) seeks enforcement of InterDigital's contractual commitment to license its standards-essential patents on FRAND terms, and a determination of an appropriate FRAND royalty for InterDigital's U.S. 3G and/or 4G patent portfolios.

## THE PARTIES

4.       ZTE (USA) is a Texas corporation with its principal place of business in Texas. ZTE (USA) imports and sells a range of electronic devices including mobile communication and media devices.

5.       Counterclaim Defendant InterDigital Communications, Inc. is a Delaware corporation with its principal place of business in Delaware, and is a complainant in the ITC Proceedings.

6.       Counterclaim Defendants InterDigital Technology Corporation is a Delaware corporation with its principal place of business in Delaware, and is a complainant in the ITC Proceedings.

7.       Counterclaim Defendant IPR Licensing, Inc. is a Delaware corporation with its principal place of business in Delaware, and is a complainant in the ITC Proceedings.

8.       Counterclaim Defendant InterDigital Holdings, Inc. is a Delaware corporation with its principal place of business in Delaware, and is a complainant in the ITC Proceedings.

## GENERAL ALLEGATIONS

9.       In the 800 ITC Proceeding, InterDigital alleges that various claims of seven patents are being infringed by ZTE (USA), namely U.S. Patent Nos. 7,502,406, 7,536,013, 7,616,970, 7,706,332, 7,706,830, 7,970,127, and 8,009,636 ("collectively the "800 Asserted Patents").

10.     In the New ITC Proceeding, InterDigital alleges that various claims of three patents are being infringed by ZTE (USA), namely U. S. Patent Nos. 7,190,966, 7,286,847, and 7,941,151 (collectively with the 800 Asserted Patents, the "Asserted Patents").

11.     Through the ITC Proceedings, InterDigital seeks exclusion and cease and desist orders barring ZTE (USA) and other respondents from, among other things, importing and selling Accused Products in the United States with 3G or 4G capabilities.   By the earlier filed action, this action, and its new ITC Complaint, InterDigital seeks injunctive and/or exclusionary relief barring ZTE (USA) from using, making, importing, offering for sale and / or selling various accused products in the United States with 3G and 4G capabilities.

12.     Prior to the institution of the ITC Proceedings, InterDigital participated in developing standards with various Standard Setting Organizations ("SSOs"), including the European Telecommunications Standards Institute ("ETSI") and the 3rd Generation Partnership Project ("3GPP") and the International Telecommunications Union ("ITU").

13.     As relevant here, InterDigital declared each of the 800 Asserted Patents to be "essential" Intellectual Property Rights ("IPR") to 3G and/or 4G standards committed to providing licenses on FRAND terms.   Additionally, in the current Complaint, InterDigital alleges infringement by virtue of ZTE's accused products' compliance with technological standards. *E.g.*, Complaint at ¶ 24 ("[T]he accused ZTE products . . . are designed to comply with the Release 99, Release 4, HSDPA, HSUPA, and/or HSPA+ standards.   Because the accused products are specifically designed to so operate, they have no substantial noninfringing uses."). On information and belief, each of the New Asserted Patents have been declared or disclosed to SSOs as essential or potentially essential to a 3G and/or 4G technological standard.

14.     The SSOs and their members, for the benefit of their members and non-members, including ZTE (USA), relied on InterDigital's FRAND commitments when they adopted these technologies, including proposals from InterDigital, into 3G and/or 4G standards.    SSOs seek FRAND commitments to ensure that patent owners will not attempt to block manufacture and sale of products practicing the standards, and to ensure that patent owners will not seek to impose onerous royalties or licensing terms and conditions on such products, given that the adoption of the standard eliminates alternative technologies competing to become incorporated into the standard.

15.     Market participants like ZTE (USA) have made substantial investments to develop and market products designed to be compatible with these standards in reliance upon InterDigital's explicit and implicit commitments to license its purportedly essential IPR, including the Asserted Patents, on FRAND terms.

16.     Further, InterDigital seeks by the injunctions sought in the earlier filed action and in this action, and by the exclusion orders sought in the ITC Proceedings, to exclude from the United States ZTE (USA)'s products by virtue of their compliance with standards to which InterDigital has committed but failed to license on FRAND terms and conditions.

17.     In further breach of its commitments, InterDigital has failed to offer and grant a license for each of the Asserted Patents to ZTE (USA) with FRAND terms and conditions, despite requests. In particular, the terms and conditions offered to ZTE (USA) are significantly less favorable than the terms and conditions of licenses that InterDigital has entered into with prior licensees, including licensees that are competitors of ZTE (USA).

18.     At all relevant times, ZTE (USA) has been and is willing to license each of the Combined Asserted Patents on FRAND terms and conditions.   ZTE (USA) affirmatively has

RLF1 8024574v.1

sought to establish a FRAND royalty rate for the Combined Asserted Patents for sales in the US so the royalty could be paid.  *See* Mar. 2, 2012 Hrg. Tr., Case No. 11-654 (D. Del.), 41:8-11, 23-25 ("The FRAND rate would be the final piece of the puzzle that would put – it would finalize the license.  Interdigital had an obligation to license.  ZTE (USA) stands here willing and will accept the license. . . .  We're here to have you decide that issue, and ZTE (USA) is willing to be bound by your decisions on the FRAND rate.").

19.    ZTE (USA) brings these counterclaims to remedy InterDigital's violation of its FRAND commitments, for specific performance of these commitments, and for related declaratory relief.

### The Importance of SSO-Related FRAND Commitments to the Wireless Industry

20.    Mobile wireless carriers, handset manufacturers, and chipset manufacturers, among others, participate in SSOs to develop standards facilitating interoperability among cellular networks and various mobile devices.  Once standards are adopted, competing manufacturers, carriers, and sellers can offer compliant products and service.

21.    Standards play an important role in the development of wireless data and telecommunications technologies by facilitating product development and network creation. Market participants are generally willing to invest in the industry because, so long as their products are compliant with published standards, those products will operate effectively within the networks and be compatible with other third-party products.

22.    Agreed standards reduce costs for component suppliers, product manufacturers and consumers.  For suppliers, standardization can reduce the need to develop products to a particular manufacturer's specifications.  Because components may be sold to multiple manufacturers, manufacturing volumes can increase and per unit costs decrease.  Product manufacturers also benefit from increased price competition among suppliers.  When

13

components are made to comply with a standard, switching suppliers typically does not require a substantial redesign of the manufacturer's products. Lower switching costs increase competition among suppliers, leading to lower consumer prices.

23.     The standard-setting process moves the industry towards a common standard by eliminating alternatives in favor of mandatory implementations of essential features of the standard. The process can confer significant market power to an entity claiming ownership of a technology included in a standard. That is particularly true in the telecommunications markets.

24.     Before standardization, the royalty a patentee could earn from a patent license for its technology was constrained by the availability of alternative technologies to perform similar functions. However, once a standard requires employment of a patented technology as a mandatory implementation of an essential feature, alternative technologies are no longer economically practical. Left unconstrained, owners of essential IPR covering functions within the standard could demand exorbitant royalties from participants who effectively must use the IPR.

25.     To address this problem, most SSOs—including those relevant to this action— have adopted IPR policies. These IPR policies generally contain requirements concerning: (a) the disclosure of IPR that may claim any portion of the specifications of the standard and (b) whether and to what extent patentees declaring purported essential IPR must commit to licensing that IPR on FRAND terms.

26.     As set forth in greater detail below, the IPR policies at issue in this case require participants declaring essential IPR to commit to license that IPR on FRAND terms. Market participants rely on these commitments to ensure, among other things, that they will not be held up by patentees seeking unreasonable royalties after the industry is locked into the standard.

RLF1 8024574v.1

**SSO FRAND Licensing Policies Are Designed to Prevent Anticompetitive Activities**

27.    InterDigital is, and was at the relevant times, a member of and has participated in development of standards by multiple SSOs, including ETSI, 3GPP, and ITU.

28.    ETSI is an SSO governed by French law and is responsible for the standardization of information and communication technologies for the benefit of its members and third parties. 3GPP is a collaborative activity through a group of recognized SSOs (its "Organizational Partners"), including ETSI. 3GPP develops technical specifications subsequently presented to and adopted as standards by its Organizational Partners, such as ETSI.  ITU is the United Nations specialized agency for information and communication technologies.

29.    Like other SSOs, ETSI, 3GPP, and ITU have developed IPR Policies designed to mitigate the risk of the anticompetitive hold-up by IPR owners inherent in any standard-setting process.   In the absence of FRAND licensing obligations, an IPR owner may demand unreasonable license fees or even refuse to license altogether and seek injunctive relief against any party that uses the patented technology.  SSO IPR Policies impose FRAND licensing obligations to ensure that IPR owners will not use their IPR to extract unreasonable license fees or to exclude any market participant that is willing to pay a FRAND license fee for use of the IPR.

30.    SSO IPR Policies strike a delicate compromise between protecting IPR and ensuring that essential, standardized technology will remain available to market participants and, ultimately, consumers.  Violation of IPR owners' FRAND licensing obligations will negatively impact the market for wireless devices and the consumers who purchase them, with consequences ranging from increased prices to fragmentation of wireless communication

RLF1 8024574v.1

standards.  Widespread violation of FRAND licensing obligations would threaten to unravel the entire SSO model for technology standardization.

31.     The FRAND licensing model is designed to eliminate these problems, providing device manufacturers and consumers with access to IPR for standardized technology, while ensuring that IPR owners receive fair and reasonable compensation for the use of their IPR. However, the system only works if IPR owners satisfy their obligation to make licenses available on FRAND terms.

### ETSI's IPR Policy

32.     ETSI's IPR Policy is set forth in Annex 6 of its Rules of Procedure. Clause 4.1 of the ETSI IPR Policy governs disclosure of essential IPR, requiring ETSI members to declare all essential IPR in a timely manner:

> [E]ach MEMBER shall use its reasonable endeavours, in particular during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates, to inform ETSI of ESSENTIAL IPRs in a timely fashion. In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

33.     Clause 15 of ETSI's IPR Policy defines IPR to mean "any intellectual property right conferred by statute law including applications therefor other than trademarks."  Therefore, market participants have a reasonable expectation that all potentially essential patents or patent applications will be disclosed to ETSI.

34.     Clause 6 of ETSI's IPR Policy governs the availability of licenses to essential IPR, requiring ETSI members to offer licenses to essential IPR on FRAND terms.  In relevant part, Clause 6.1 states:

> When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an

16

undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory terms and conditions under such IPR to at least the following extent: MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE; sell, lease or otherwise dispose of EQUIPMENT so MANUFACTURED; repair, use, or operate EQUIPMENT; and use METHODS.

35.     Clause 8 of ETSI's IPR Policy governs situations where an owner of essential IPR refuses to undertake a FRAND commitment. In relevant part, Clause 8.1 states:

8.1.1 Where prior to the publication of a STANDARD or a TECHNICAL SPECIFICATION an IPR owner informs ETSI that it is not prepared to license an IPR in respect of a STANDARD or TECHNICAL SPECIFICATION in accordance with Clause 6.1 above, the General Assembly shall review the requirement for that STANDARD or TECHNICAL SPECIFICATION and satisfy itself that a viable alternative technology is available for the STANDARD or TECHNICAL SPECIFICATION which:

- is not blocked by that IPR; and

- satisfies ETSI's requirements.

8.1.2. Where, in the opinion of the General Assembly, no such viable alternative technology exists, work on the STANDARD or TECHNICAL SPECIFICATION shall cease, and the Director-General of ETSI shall observe the following procedure:

a)  If the IPR owner is a MEMBER,

    i)  the Director-General of ETSI shall request that MEMBER to reconsider its position.

    ii) If that MEMBER however decides not to withdraw its refusal to license the IPR, it shall then inform the Director-General of ETSI of its decision and provide a written explanation of its reasons for refusing to license that IPR, within three months of its receipt of the Director General's request

    iii) The Director-General of ETSI shall then send the MEMBER's explanation together with relevant extracts from the minutes of the General Assembly to the ETSI Counsellors for their consideration.

36.     Thus, if an ETSI member refuses to agree to FRAND licensing of essential IPR, ETSI will select an alternative technology to incorporate into the standard, or will stop work entirely on the standard if no alternative is available.

37.     ETSI's IPR Policy was designed to benefit all ETSI members, as well as nonparties complying with ETSI standards. The explicit objective of the policy, described in Clause 3.1, is to "reduce the risk" to those complying with the standards and technical specifications "that investment in the preparation, adoption and application of STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD or TECHNICAL SPECIFICATION being unavailable."

### 3GPP's IPR Policy

38.     As a collaborative activity among its Organizational Partners (including ETSI), 3GPP requires its members to declare and offer licenses to essential IPR on FRAND terms, as well as to abide by the IPR policies of their respective Organizational Partner.  Article 55 of the 3GPP Working Procedures states, in relevant part:

> Individual Members shall be bound by the IPR Policy of their respective Organizational Partner.
>
> Individual Members should declare at the earliest opportunity, any IPRs which they believe to be essential, or potentially essential, to any work ongoing within 3GPP.  Declarations should be made by Individual Members to their respective Organizational Partners.
>
> Organizational Partners should encourage their respective members to grant licenses on fair, reasonable terms and conditions and on a non-discriminatory basis.

39.     As a 3GPP "Individual Member," InterDigital was "bound by the IPR Policy" of ETSI, the "Organization Partner" through which InterDigital participated in 3GPP.  That policy requires InterDigital to offer a FRAND license as described in paragraphs 27-31 of these counterclaims.

### ITU's IPR Policy

40.     Under ITU's Common Patent Policy, if a technical recommendation is developed and essential IPR has been disclosed, then either the patent holder must declare that it is willing

to negotiate licenses "free of charge" or "on a non-discriminatory basis on reasonable terms and conditions." If the patent holder is not willing to declare under either of those provisions, and indicates an unwillingness to license under those constraints, then "the Recommendation | Deliverable shall not include provisions depending on the patent."

**InterDigital Has Binding FRAND Obligations with Respect to the Asserted Patents**

41.     During all relevant times, InterDigital was a member of ETSI, 3GPP, and ITU. InterDigital participated in ETSI's, 3GPP's, and ITU's development of mobile communications standards for, among others, Global System for Mobile Communications ("GSM"), Universal Mobile Telecommunications System ("UMTS"), and 3GPP.

42.     InterDigital explicitly has declared to ETSI and/or ITU that each of the Asserted Patents is essential to one or more 3G and/or 4G standards, and explicitly has undertaken to grant irrevocable licenses to each of the Asserted Patents on FRAND terms and conditions.

43.     As a result of its membership and participation in the SSOs, and its declarations and concomitant commitments, InterDigital was and is bound by their policies and procedures, including IPR Policies, and is obligated to license the Asserted Patents on FRAND terms. InterDigital, however, has engaged in a course of conduct that has violated the very policies put in place by these SSOs to prevent the anticompetitive patent hold-up by which InterDigital now seeks to profit.

**InterDigital Has Breached Its FRAND Obligations**

44.     Notwithstanding InterDigital's declarations of essentiality, and implicit and explicit FRAND commitments, InterDigital has failed to offer a FRAND license to ZTE (USA) with respect to potentially essential patents in its portfolio- including the Asserted Patents at issue in the ITC Proceedings.

45.     Additionally, InterDigital initiated the ITC Proceedings, by which InterDigital seeks to harm irreparably ZTE (USA)'s substantial business by seeking to exclude its products and to extract unfair and unreasonable license terms.

## COUNT I
## BREACH OF CONTRACT

46.     ZTE (USA) incorporates the allegations set forth in paragraphs 1-43, above.

47.     The conduct of InterDigital as alleged above constitutes breach of contract.

48.     As set forth above, InterDigital entered into express or implied contracts with ETSI, 3GPP, ITU, their members, and manufactures and sellers of products designed to be compliant with standards adopted by these SSOs, including ZTE (USA), to grant licenses to its purportedly essential IPR on FRAND terms.

49.     InterDigital has breached and continues to breach these contracts by failing to license purportedly essential IPR, including the Asserted Patents, on FRAND terms.

50.     As a result of these multiple contractual breaches, ZTE (USA) has been injured, including in its business and property.   ZTE (USA) has been forced to expend resources resolving this licensing dispute, and is threatened, in particular, with irreparable loss of profits, loss of customers and potential customers, loss of goodwill and product image, and uncertainty among customers and potential customers.

## COUNT II
## BREACH OF CONTRACT—THIRD PARTY BENEFICIARY

51.     ZTE (USA) incorporates the allegations set forth in paragraphs 1-50, above.

52.     As set forth above, InterDigital entered into express or implied contracts with ETSI, 3GPP, ITU, and their members, to grant licenses to its purportedly essential IPR on FRAND terms.

RLF1 8024574v.1

53.     InterDigital's contracts with these SSOs, and in particular InterDigital's commitments in the contracts to grant applicants licenses to its purportedly essential IPR on FRAND terms evince a clear intent that the contracts benefit ZTE (USA) and other third parties who might require a license to the Asserted Patents.

54.     These same contractual commitments create a duty on behalf of InterDigital to license its Asserted Patents on fair, reasonable, and non-discriminatory terms.

55.     It is only by InterDigital's fulfilling its promise to license the Asserted Patents on FRAND terms that ZTE (USA) will receive the intended benefit of being able to practice the implicated standards free from unreasonably high and discriminatory licensing demands.

56.     InterDigital has breached and continues to breach its contracts with ETSI, 3GPP, and ITU by refusing to license its purportedly essential IPR, including the Asserted Patents, to the contracts' third-party beneficiary, ZTE (USA), on FRAND terms.

57.     As a result of these multiple contractual breaches, ZTE (USA) has been injured, including in its business and property. ZTE (USA) has been forced to expend resources resolving this licensing dispute, and is threatened, in particular, with irreparable loss of profits, loss of customers and potential customers, loss of goodwill and product image, and uncertainty among customers and potential customers.

## COUNT III
## EQUITABLE ESTOPPEL

58.     ZTE (USA) incorporates the allegations set forth in paragraphs 1-57, above.

59.     InterDigital made clear and definite promises to potential licensees through its commitments to the various SSOs that-it would license its purportedly essential IPR, including the Asserted Patents, on FRAND terms.

RLF1 8024574v.1

60.     The intended purpose of InterDigital's promises was to induce reliance. InterDigital knew or should have reasonably expected that these promises would induce manufacturers and sellers of mobile wireless devices, like ZTE (USA), to develop, manufacture, and/or market products compliant with the relevant standards.

61.     ZTE (USA) has invested substantial monies in the applicable technology to market and/or sell products compliant with the relevant standards in reliance on InterDigital's promises, as described above.

62.     InterDigital is estopped from repudiating these promises under the doctrine of promissory estoppel.

63.     ZTE (USA) has been harmed and is threatened with irreparable harm as a result of its reasonable reliance on InterDigital's promises and the wrongful conduct of InterDigital.  ZTE (USA) has been forced to expend resources resolving this licensing dispute, and is threatened, in particular, with irreparable loss of profits, loss of customers and potential customers, loss of goodwill and product image, and uncertainty among customers and potential customers.

64.     ZTE (USA) lacks an adequate remedy at law.

## COUNT IV
## WAIVER OF RIGHT TO ENJOIN

65.     ZTE (USA) incorporates the allegations set forth in paragraphs 1-64, above.

66.     SSOs, including ETSI, 3GPP, and ITU each have IPR Policies that require its members and participants in the standard-setting process to grant licenses to purportedly essential IPR on FRAND terms.

67.     InterDigital is and has been a member of these SSOs and has been a participant in their standards setting processes, including through participation in the promulgation of relevant mobile and wireless communication standards.

22

68.     By doing so, and by explicitly declaring the Asserted Patents to be essential, InterDigital implicitly and explicitly committed to license its IPR, including the Asserted Patents, on FRAND terms.

69.     By committing to license its purportedly essential IPR on FRAND terms, InterDigital has engaged in a course of conduct with regard to such IPR, including the Asserted Patents, that is inconsistent with an intent to enforce any injunctive or exclusionary rights that it may possess with regard to such purportedly essential IPR.

70.     As a result of InterDigital's conduct, ZTE (USA) reasonably believed, and reasonably relied on the belief, that InterDigital would not seek to enforce any injunctive or exclusionary rights with respect to its purportedly essential IPR, including the Asserted Patents, but rather would seek only to license such IPR on FRAND terms.

71.     ZTE (USA), in reliance upon this reasonable belief, made substantial investments in the applicable technology to market and/or sell products compliant with the relevant standards.

72.     InterDigital has waived any rights it may have had to seek any injunctive or exclusionary relief with respect to its purportedly essential IPR, including the Asserted Patents, that it committed, but failed, to license on FRAND terms.

## COUNT V
## DECLARATORY RELIEF: INTERDIGITAL
## HAS NOT OFFERED LICENSES ON FRAND TERMS

73.     ZTE (USA) incorporates the allegations set forth in paragraphs 1-72, above.

74.     There is an actual controversy between the parties concerning whether the terms on which InterDigital has offered to license its purported essential patents are fair, reasonable, and nondiscriminatory.

75.     The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

76.     ZTE (USA) is entitled to a declaratory judgment that InterDigital has not to date offered it licenses on FRAND terms.

**COUNT VI**
**DECLARATORY RELIEF:  DETERMINATION OF FRAND LICENSE**

77.     ZTE (USA) incorporates the allegations set forth in paragraphs 1-76, above.

78.     There is an actual controversy between the parties concerning FRAND terms for InterDigital' s United States patents that have been declared essential to a standard used by any of the products accused in the earlier filed cases or this action.

79.     The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

80.     ZTE (USA) is entitled to a declaratory judgment determining an appropriate FRAND royalty for InterDigital's United States patents that have been declared essential to a standard used by any of the products accused in the earlier filed cases or this action.

**COUNT VII**
**NONINFRINGEMENT OF THE ASSERTED PATENTS**

81.     ZTE (USA) incorporates the allegations set forth in paragraphs 1–80, above, and in its answer to InterDigital's complaint.

82.     An actual controversy exists between the parties with respect to infringement of the Asserted Patents because InterDigital has brought this action against ZTE (USA) alleging that ZTE (USA) infringes the Asserted Patents.

83.     ZTE (USA) has not and is not now infringing, contributorily infringing, or inducing infringement of the Asserted Patents.

84.     ZTE (USA) is entitled to a judgment that ZTE (USA) does not infringe any claims of the Asserted Patents.

24

## COUNT VIII
## INVALIDITY OF THE ASSERTED PATENTS

85.     ZTE (USA) incorporates the allegations set forth in paragraphs 1–84, above, and in its answer to InterDigital's complaint.

86.     An actual controversy exists between the parties with respect to invalidity of the Asserted Patents because InterDigital has brought this action against ZTE (USA) alleging that ZTE (USA) infringes the Asserted Patents.

87.     The claims of the Asserted Patents are invalid under Section 101 of Title 35 of the United States Code as directed to non-statutory subject matter.

88.     The claims of the Asserted Patents are invalid under Sections 102 and/or 103 of Title 35 of the United States Code as anticipated or obvious in light of the prior art.

89.     The claims of the Asserted Patents are also invalid under the requirements of paragraph 1 of Section 112 of Title 35 of the United States Code due to a lack of written description, failure to particularly point out and distinctly claim the subject matters which are regarded as the alleged inventions, and/or failure to set forth written descriptions sufficient to enable any person skilled in the art to make and use the alleged inventions. In addition, the claims of the Asserted Patents are invalid under paragraph 2 of Section 112 of Title 35 of the United States Code because those claims are indefinite in that they contain ambiguous language and/or functional limitations that prevent a person skilled in the art from determining their full scope or meaning.

90.     ZTE (USA) is entitled to a judgment that the claims of the Asserted Patents are invalid.

RLF1 8024574v.1

## COUNT IX
## UNENFORCEABILITY OF THE ASSERTED PATENTS

91.     ZTE (USA) incorporates the allegations set forth in paragraphs 1–90, above, and in its answer to InterDigital's complaint.

92.     An actual controversy exists between the parties with respect to unenforceability of the Asserted Patents because InterDigital has brought this action against ZTE (USA) alleging that ZTE (USA) infringes the Asserted Patents.

93.     The Asserted Patents are unenforceable under one or more of the equitable doctrines of patent misuse, unclean hands, equitable estoppel, promissory estoppel, and implied license.

94.     ZTE (USA) is entitled to a judgment that the Asserted Patents are unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, ZTE (USA) respectfully prays for relief as follows:

(a)     A judgment that InterDigital has breached its contracts with ZTE (USA) by failing to offer licenses on FRAND terms to purported essential IPR, including the Asserted Patents, ordering specific performance of these contracts, and awarding appropriate damages in an amount to be proven at trial;

(b)     A judgment that InterDigital has breached its contracts with the SSOs, harming ZTE (USA) as third-party beneficiary of those contracts, by failing to offer licenses on FRAND terms to purported essential IPR, including the Asserted Patents, ordering specific performance of these contracts, and awarding appropriate damages in an amount to be proven at trial;

(c)     A judgment that InterDigital is equitably estopped from seeking any relief from the United States International Trade Commission in the ITC Proceeding, or in any other

forum, for ZTE (USA)'s alleged infringement of InterDigital's purported essential IPR, including the Asserted Patents;

(d)     A judgment that InterDigital has waived any right it may have possessed to seek any relief from the United States International Trade Commission in the ITC Proceedings, or in any other forum, for ZTE (USA)'s alleged infringement of InterDigital's purported essential IPR, including the Asserted Patents;

(e)     A declaratory judgment that InterDigital has not to date offered ZTE (USA) licenses on FRAND terms;

(f)     A declaratory judgment setting an appropriate FRAND royalty to license InterDigital's United States patents, including the Asserted Patents, that have been declared essential to a standard used by any products accused in the earlier filed case or in this action;

(g)     A declaratory judgment that ZTE (USA) does not infringe any claim of the Asserted Patents;

(h)     A declaratory judgment that the claims of the Asserted Patents are invalid;

(i)     A declaratory judgment that the Asserted Patents are unenforceable;

(j)     Awarding to ZTE (USA) the costs and disbursements of the action, including reasonable attorneys' fees; and

(k)     Such other relief as the Court may deem just and equitable.

RLF1 8024574v.1

_____/s/ Kelly E. Farnan_____

Kelly E. Farnan (#4395)
Farnan@rlf.com
OF COUNSEL:                                       Travis S. Hunter (#5350)
                                                 Hunter@rlf.com
Brinks Hofer Gilson & Lione                      Richards, Layton & Finger, P.A.
NBC Tower, Suite 3600                            One Rodney Square
455 North Cityfront Plaza Drive                  920 N. King Street
Chicago, IL  60611                               Wilmington, DE 19801
(312) 321-4200                                   302-651-7700

                                                 *Attorneys for Defendant ZTE (USA) Inc.*

Dated:  January 31, 2013