IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **INTERDIGITAL COMMUNICATIONS, INC.**, *et al.*, <br><br>                  Plaintiffs and Counterclaim Defendants; <br><br> v. <br><br> **ZTE CORP.**, *et al.*, <br><br>                  Defendants and Counterclaim Plaintiffs. | Civil Action No. 1:13-cv-00009-RGA |
| **INTERDIGITAL COMMUNICATIONS, INC.**, *et al.*, <br><br>                  Plaintiffs and Counterclaim Defendants; <br><br> v. <br><br> **NOKIA CORP.**, *et al.* <br><br>                  Defendants and Counterclaim Plaintiffs. | Civil Action No. 1:13-cv-00010-RGA |

MEMORANDUM OPINION

Neal C. Belgam, Esq., Smith, Katzenstein & Jenkins, Wilmington, DE; David S. Steuer, Esq. (argued), Maura L. Rees, Esq., and Michael B. Levin, Esq., Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, attorneys for the Plaintiffs and Counterclaim Defendants InterDigital Communications, Inc., InterDigital Technology Corp., IPR Licensing, Inc., and InterDigital Holdings Inc.

Kelly E. Farnan, Esq., Richards, Layton & Finger, Wilmington, DE; Jay Reiziss, Esq. (argued), Brinks, Gilson, & Lione, Washington D.C.; Jeffrey J. Catalano, Esq., Brinks, Gilson, & Lione,

Chicago, IL, attorneys for the Defendants and Counterclaim Plaintiffs Nokia Inc. and Nokia Corp.

Jack B. Blumenfeld, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Patrick J. Flinn, Esq. (argued), Mark A. McCarty, Esq., Alston & Bird LLP, Atlanta, GA, attorneys for the Defendants and Counterclaim Plaintiffs ZTE Corp. and ZTE (USA) Inc.

May 28, 2014

*/s/ Richard G. Andrews*
ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently before the Court is InterDigital Communications, Inc., InterDigital Technology Corp., IPR Licensing, Inc., and InterDigital Holdings Inc.'s Motion to Dismiss the Amended FRAND Counterclaims. (1:13-cv-00009-RGA, D.I. 71; 13-cv-00010-RGA, D.I. 55). The Court has reviewed the relevant briefing. (1:13-cv-00009-RGA, D.I. 72, 88, 116; 1:13-cv-00010-RGA, D.I. 56, 70, 99). The Court heard oral argument on November 26, 2013. (1:13-cv-00009-RGA, D.I. 256). For the reasons set forth herein, the Plaintiffs' Motion to Dismiss is **GRANTED**.

## BACKGROUND

In order for competing technology companies to make products that can interoperate, standards setting organizations ("SSOs") have been established, such as the European Telecommunications Standards Institute ("ETSI"). (1:13-cv-00009-RGA, D.I. 58 at 56). SSOs allow for companies to meet and jointly determine which technology and standard will be used by all companies in the field. *Id*. However, in order to prevent patent holdup, most SSOs require that companies that participate in the creation of the various standards declare any patents that they hold related to the standard, and whether they are, may be, or may become essential to the standard. *Id*. at 57. Those companies that declare possible essential patents are provided a choice: either they agree to license their essential patents on fair, reasonable, and non-discriminatory terms ("FRAND") or the SSO will attempt to create a standard that does not infringe the declared patents. *Id*.

Here, the FRAND counterclaims involve about 500 patents that were declared to ETSI as possibly reading on the Universal Mobile Telecommunications Systems ("UMTS") and/or Long Term Evolution ("LTE") standards. (1:13-cv-00009-RGA, D.I. 72 at 18). Additionally, the

1

counts include an unknown number of patents that are related to the Code Division Multiple Access 2000 ("CDMA2000") standard as defined by the SSO International Telecommunication Union ("ITU"). *Id.*

### ZTE Negotiation History

ZTE and InterDigital's licensing negotiations began in January 2009. (1:13-cv-00009-RGA, D.I. 58 at 62). InterDigital made three offers to license its worldwide patent portfolio, for both its essential and non-essential patents. *Id.* Each offer was based on a running royalty and required a cross-license of ZTE patents. *Id.* at 62, 63. During these negotiations, InterDigital filed a complaint with the ITC on July 26, 2011. *Id.* at 63. Negotiations then broke down between InterDigital and ZTE until March 2012. *Id.* InterDigital's offers continued to include a worldwide license, while ZTE wanted the license to be limited to sales in the United States. *Id.* ZTE maintained during negotiations that InterDigital's offers did not meet FRAND terms as the royalty rate was too high and it including "floors" and "ceilings" in the contract that would impose fixed royalties. *Id.* ZTE and InterDigital continued to make offers and counteroffers. *Id.* at 64, 65. On January 2, 2013, InterDigital filed a second set of lawsuits in the ITC and in District Court. *Id.* at 67. The Complaint was forwarded to ZTE with a letter stating "because ZTE Corporation and ZTE (USA) Inc. have refused the FRAND license proposals previously made by InterDigital, we found it necessary to file an additional ITC action, and parallel District Court action, earlier today." *Id.* at 67 (internal quotation marks and brackets omitted).

### Nokia Negotiation History

During the last six years InterDigital has made four licensing offers to Nokia. The license offers included a lump sum payment for the UMTS patents only, and an offer for a

running royalty rate. (1:13-cv-00010-RGA, D.I. 49 at 59, 60). Despite Nokia's request for the same rate that InterDigital was offering to other companies, including RIM, Samsung, and LG, InterDigital has refused to make such an offer. *Id*. Furthermore, InterDigital has not made an offer that would be either limited to the essential patents as related to the relevant standards or limited in scope to the United States. *Id* at 60, 61. During this time, InterDigital has filed three ITC actions against Nokia. *Id*. at 59. Additionally, Nokia has provided multiple license offers to InterDigital, including one dated January 7, 2013 that included InterDigital's requested running royalty rate, but limited to Nokia sales in the United States through January 1, 2014 for any patents that InterDigital maintains are essential for one of the standards. *Id*. at 64. InterDigital rejected this offer, stating that the rate InterDigital had provided had been a blended rate covering all global sales. *Id*. InterDigital and Nokia also held negotiations regarding the possibility of arbitration. *Id*. at 65-68.

## ANALYSIS

InterDigital moves the Court to dismiss ZTE's counterclaims III and IV and Nokia's counterclaims III and VIII for lack of subject matter jurisdiction. ZTE's counterclaims III and IV request the Court to find that InterDigital did not provide any FRAND offers and request the Court to determine a FRAND rate. Nokia's counterclaims III and VIII request the Court to find that InterDigital has not offered a FRAND rate to Nokia and for the Court to determine what FRAND license terms would be. The Court will address these issues in tandem, as it is logical that the Court must first determine what a FRAND rate would be in order to determine whether InterDigital made FRAND offers.

3

For a declaratory judgment action to move forward there must be subject matter jurisdiction. *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 646 (3d Cir. 1990). While there is no specific test to determine whether there is subject matter jurisdiction, the Third Circuit has determined that there are three basic principles that must be considered: (1) "adversity of the interest of the parties," (2) "conclusiveness of the judicial judgment," and (3) "the practical help, or utility, of that judgment." *Id.* at 647. The Court assumes, without finding, that there is adversity of interest of the parties, and that the Court could conclusively decide a FRAND rate. The Court will turn its attention to the practical help, or utility, of such a judgment.

Practical Help or Utility

*Legal Standard*

The Third Circuit requires that for a district court to take up a declaratory judgment suit the court must be "*convinced* that by its action a useful purpose will be served." *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) (emphasis added, internal quotation marks omitted, brackets omitted). "Therefore, even if a declaratory judgment would clarify the parties' legal rights, it should ordinarily not be granted unless the parties' plans of actions are likely to be affected by a declaratory judgment." *Id.* (internal quotation marks omitted).

*Discussion*

InterDigital argues that even if the Court were to determine a FRAND rate it would be of no practical help or utility. (1:13-cv-00009-RGA, D.I. 72 at 25). InterDigital argues that this is because if the Court were to determine a FRAND rate for the hundreds of patents brought before

4

it as part of the declaratory judgment action, there would remain disputes about whether particular patents are or are not essential. *Id.* Furthermore, InterDigital argues that neither Nokia nor ZTE have made firm commitments to sign a license based on what the Court determines would be a FRAND rate, but instead have only "averred in their counterclaims that their willingness to pay under a license is contingent on findings of validity, essentiality, and infringement of InterDigital's patents." *Id.* at 20.

Nokia argues that the Court's finding regarding the declaratory judgment counts would be useful. First, Nokia argues that it does not matter that the declaratory judgment action would not resolve all license issues, specifically those that relate to non-essential patents, as the Third Circuit precedent holds that a declaratory judgment need not resolve all issues. (1:13-cv-00010-RGA, D.I. 70 at 21). Furthermore, Nokia argues that, "Nokia has stated its willingness to take a license to InterDigital's 3G and 4G patents that are valid, essential, and actually used by Nokia." *Id.* at 10.

ZTE also argues that the Court's determination of the FRAND obligations would be useful as it would "alleviat[e] the uncertainty, insecurity, and controversy between the parties with respect to InterDigital's right to a FRAND royalty, such that ZTE can make, use, and sell in the U.S. devices that comply with the asserted 3G and 4G standards." (1:13-cv-00009-RGA, D.I. 88 at 18). Further, ZTE makes the same arguments that Nokia makes regarding the fact that it is not necessary for a declaratory judgment action to resolve all issues. *Id.* at 19. ZTE also argues that it is not relevant that ZTE has not identified which patents are essential, as that can be conclusively determined during discovery. *Id.* Additionally, ZTE argues that it "is committed to accepting a license with the Court-determined FRAND rate, regardless of findings on

5

infringement or validity for any particular patent, and therefore, Count IV is not contingent on such findings." *Id.* at 13.

The Court is far from convinced that the trial that would be necessitated by the declaratory judgment would serve any useful purpose. First, even if the Court were to determine a FRAND rate, I am unclear as to how I could actually enforce such a ruling. While both Nokia, and to a greater extent ZTE, have indicated their "willingness" to accept a license, there has been no sworn affidavit by either company that they would sign a license. Companies can change or sell their product lines. They can enter and withdraw from markets. They can appeal district court decisions, and initiate other litigation, which would either delay or derail a final judgment. All the Court's determination of a FRAND rate would accomplish would be to give a data point from which the parties could continue negotiations. Second, the determination of a FRAND rate would not lead directly to a patent license as multiple other license issues would still need to be negotiated between the parties, any one of which could become a sticking point.[1] For example, license agreements often include agreements as to warranties, indemnification, cross-licensing, trademarks and attribution, insurance, etc. Therefore, it is evident to the Court that even if the Court were able to determine the FRAND rate in an efficient manner, which the Court finds highly dubious considering that there are 500 or so possibly relevant patents, the Court's FRAND finding would have little utility and serve little to no useful purpose.

The Court also finds that the Defendants' declaratory judgment actions seeking the Court to determine whether InterDigital has offered a FRAND rate, would also serve little to no useful

---

[1] On multiple occasions I have seen parties to patent litigation agree to a term sheet but be unable to turn the term sheet into a final agreement.

6

purpose. First, the Court would have to determine an appropriate FRAND rate in order to determine whether a FRAND offer had been made, which as discussed above, would not serve any useful purpose. Second, the Court would need to determine whether such offer was actually made. Similar to the determination of the FRAND rate itself, the only purpose of this would be to alter the current negotiating power between the parties. Third, any impact that this determination would have on the patents-in-suit is encompassed within the multitude of affirmative defenses that both Nokia and ZTE assert.[2]

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiffs' Motions to Dismiss. (1:13-cv-00009-RGA, D.I. 71; 13-cv-00010-RGA, D.I. 55).[3] An appropriate order will be entered.

---

[2] The Court notes that there are various affirmative defenses that the defendants have asserted in this case. For example, the FRAND issues are captured by ZTE's fifth affirmative defense for patent misuse, sixth affirmative defense for breach of contract, seventh affirmative defense for unclean hands, and eighth affirmative defense for the existence of an express or implied license. (1:13-cv-00009-RGA, D.I. 58 at 8-10).

[3] It seems to me likely that the parties do in fact want to reach an agreement. Negotiating such an agreement involves mostly business considerations. It does not seem to me that litigation by itself is a very effective means to make an agreement between willing parties. I understand that the parties cannot agree on the scope of arbitration. If they could, or they could decide to have the arbitrator decide the scope, that would appear to be a possible way to proceed.

7