IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERDIGITAL COMMUNICATIONS, INC., a Delaware corporation, INTERDIGITAL TECHNOLOGY CORPORATION, a Delaware corporation, IPR LICENSING, INC., a Delaware corporation, and INTERDIGITAL HOLDINGS, INC., a Delaware corporation,<br><br>    Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>ZTE CORPORATION, a Chinese corporation, and ZTE (USA) INC., a New Jersey corporation,<br><br>    Defendants and Counterclaim Plaintiffs. | Civil Action No.: 1:13-cv-00009-RGA |
| INTERDIGITAL COMMUNICATIONS, INC., a Delaware corporation, INTERDIGITAL TECHNOLOGY CORPORATION, a Delaware corporation, IPR LICENSING, INC., a Delaware corporation, and INTERDIGITAL HOLDINGS, INC., a Delaware corporation,<br><br>    Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>NOKIA CORPORATION, NOKIA, INC., AND MICROSOFT MOBILE OY,<br><br>    Defendants and Counterclaim Plaintiffs. | Civil Action No.: 1:13-cv-00010-RGA |

MEMORANDUM OPINION

Neal C. Belgam, Esq., Smith, Katzenstein & Jenkins, Wilmington, DE; Maximilian A. Grant, Esq., Bert C. Reiser, Esq., Jonathan D. Link, Esq., Latham & Watkins LLP, Washington D.C.; Ron E. Schulman, Esq., Latham & Watkins LLP, Menlo Park, CA; Julie M. Holloway, Esq. (argued), Latham & Watkins LLP, San Francisco, CA; David S. Steuer, Esq., Michael B. Levin, Esq., Maura L. Rees, Esq., Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, attorneys for Plaintiffs InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc.


Kelly E. Farnan, Esq., Travis S. Hunter, Esq., Richards, Layton & Finger, Wilmington, DE; Ralph J. Gabric, Esq., Charles M. McMahon, Esq. (argued), Mircea A. Tipescu, Esq., Brian A. Jones, Esq., Hersh H. Mehta, Esq., Brinks, Gilson, & Lione, Chicago, IL; Jay H. Reiziss, Esq., Brinks, Gilson, & Lione, Washington D.C., attorneys for Defendants ZTE Corporation and ZTE (USA) Inc.


Jack B. Blumenfeld, Esq., Rodger D. Smith II, Esq., Jeremy A. Tigan, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Richard A. Cederoth, Esq., Sidley Austin LLP, Chicago, IL; Brian R. Nester, Esq., Joseph A. Micallef, Esq. (argued), Sidley Austin LLP, Washington, DC; Dan K. Webb, Esq., Raymond C. Perkins, Esq., Kevin E. Warner, Esq., Winston & Strawn LLP, Chicago, IL; David A. Frist, Esq., Alston & Bird, Atlanta, GA, attorneys for Defendants Nokia Corporation, Nokia, Inc. and Microsoft Microsoft Mobile Oy.

March 6, 2015

*[signature]*
ANDREWS, U.S. DISTRICT JUDGE:

Pending before this Court is the issue of claim construction of various disputed terms found in U.S. Patent Nos. 8,380,244 ("the '244 patent") and 7,941,151 ("the '151 patent"). The Court has considered the Parties' Joint Claim Construction Briefs. (D.I. 407 & 485). The Court heard oral argument on February 27, 2015. (D.I. 418 [hereinafter "Tr."]).

## I. BACKGROUND

On January 2, 2013, InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc. ("Plaintiffs") filed four patent infringement actions. (C.A. 13-8-RGA D.I. 1; C.A. 13-9-RGA D.I. 1; C.A. 13-10-RGA D.I. 1; C.A. 13-11-RGA D.I. 1).[1] The two actions relevant to this opinion are against ZTE Corporation and ZTE (USA) Inc. (collectively, "ZTE") (C.A. 13-9-RGA) and Nokia Corporation, Nokia, Inc., and Microsoft Mobile Oy (collectively, "Nokia") (C.A. 13-10-RGA).[2]

The Court held a six-day jury trial for the ZTE action on October 21, 2014 through October 27, 2014. InterDigital alleged that ZTE infringed U.S. Patent Nos. 7,190,966, 7,286,847, the '244 patent, and the '151 patent. The Court declared a mistrial as to the '151 patent on October 22, 2014. (D.I. 444 at 680). The jury found all asserted claims of the remaining patents valid and infringed. (D.I. 450).

Following the ZTE trial, Nokia moved for leave to file additional claim construction briefs regarding certain terms in the '244 patent. (D.I. 375). The Court granted the motion in part. (D.I. 396). The Court gave Nokia leave to make additional arguments for two terms in the

---

[1] Citations to D.I. 485, D.I. 486, and D.I. 488 are to the C.A. 13-9-RGA docket. All other docket citations are to C.A. 13-10-RGA.
[2] With respect to the '244 patent, "Defendants" refers to Nokia. With respect to the '151 patent, "Defendants" refers to Nokia and ZTE.

3

'244 patent. (D.I. 396). The Court heard claim construction arguments for the '244 patent at the *Markman* hearing originally scheduled for the '151 patent.

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks and citations omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (internal quotation marks and citations omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim

4

construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (internal citations omitted).

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks and citations omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

### III. CONSTRUCTION OF DISPUTED TERMS

#### A. The '244 Patent

Claim 1 of the '244 patent is representative and reads:

A subscriber unit comprising:

    a cellular transceiver configured to communicate with a cellular wireless network via a plurality of assigned physical channels;

    an IEEE 802.11 transceiver configured to communicate with an IEEE 802.11 wireless local area network; and

5

> a processor configured to *maintain a communication session with the cellular wireless network* in an absence of the plurality of *assigned physical channels* while the IEEE 802.11 transceiver communicates packet data with the IEEE 802.11 wireless local area network.

(emphasis added).

1. "maintain a communication session with the cellular wireless network"

    a. *Plaintiffs' proposed construction*: No construction necessary. If construed, "maintain a [horizontal] logical connection with the cellular wireless network."

    b. *Defendants' proposed construction*: maintain a connection between two layers of the subscriber unit's cellular protocol stack above the physical layer

    c. *Court's construction*: maintain a horizontal logical connection with the cellular wireless network

The Court previously construed "maintain a communication session with the cellular wireless network in an absence of the plurality of assigned physical channels" as "maintain a logical connection with the cellular wireless network when none of the plurality of assigned physical channels are in use by the subscriber unit." (D.I. 219 at p. 12). The key dispute with respect to this term is whether the connection is a horizontal connection between a protocol layer of a subscriber unit and a peer protocol layer of a wireless network or a vertical connection between layers of a protocol stack within the subscriber unit.

Plaintiffs argue that the term "logical connection" is well understood and does not require construction. (D.I. 407 at 9). The Court does not agree and will therefore construe the term. Plaintiffs argue that, if construed, the term should be construed to clarify that the connection is horizontal. (*Id.* at 10). They maintain that the surrounding claim language mandates this construction, as it requires a connection "*with* the cellular wireless *network*," and therefore cannot be a connection within the subscriber unit alone. (*Id.* at 11 (emphasis in original)). Plaintiffs further argue that the specification supports a horizontal connection. (*Id.* at 14). They

6

note that the specification teaches "establishing a logical connection using a higher layer protocol, such as the network layer protocol, from a subscriber unit, such as may be connected to a portable computer node, to an intended peer node . . . ." (*Id.* (quoting '244 patent, col. 4, ll. 6-9)). Plaintiffs also argue that the prosecution history supports their construction. (*Id.* at 15).

Defendants argue that maintaining a communication session is limited to spoofing; in other words, tricking higher layers of a protocol stack into thinking there is a physical connection between the subscriber unit and the cellular network when there is not. They note that the specification states that "certain physical layer connections may expect to receive a continuous stream of synchronous data bits" even in the absence of a physical connection. (*Id.* (quoting '244 patent, col. 6, ll. 34-35)). This is achieved by looping back data bits to spoof the equipment into thinking that a physical connection has been maintained. (*Id.*) Defendants argue that these looped data bits sent over a vertical connection between two layers of the subscriber unit's protocol stack maintain the communication session. (*Id.* at 20).

Defendants further argue that the communication session is not a logical connection. (*Id.* at 22). Therefore, Plaintiffs' argument that the claim language supports Plaintiffs' construction is unfounded. (*Id.*). Defendants argue that the specification does not teach maintaining a logical connection in the absence of a physical connection. (*Id.* at 21). Rather, it describes maintaining the appearance of a logical connection. (*Id.*).

Defendants also argue that the prosecution history supports their construction. (*Id.* at 23). They note that the examiner originally rejected the relevant claim because the specification failed to enable "maintaining a communication session, above a physical layer, in the absence of assigned physical channels." (*Id.* at 23 (quoting D.I. 410, Ex. Q at p. 8)). The applicants responded by stating that "the communication session may be maintained via the logical

7

connection (for example, a higher layer protocol) even as one or more of the physical wireless channels are released." (D.I. 410, Ex. Q at p. 9). In support of this argument, the applicants pointed to portions of the application that discuss the use of spoofing. (*Id.*) The examiner responded to this argument in the Final Office Action by stating:

> The Examiner notes that Applicants have defined "a processor configured to maintain a communication session, with the first wireless network in the absence of the plurality of assigned physical layer channels while communicating packet data with the IEEE 802.11 wireless local area network via the second transceiver." For example, Applicants generally point to paragraphs 0023 and 0078 (see paper dated 1/28/2011 at page 9[),] which basically indicates some sort of spoofing (i.e. spoof the terminal into believing that a sufficient wide wireless communication link is continuously available).

(*Id.*, Ex U at pp. 11-12).

The Court finds that the claim language and specification support Plaintiffs' proposed construction.[3] The Court previously construed "communication session" in this context to mean "logical connection." (D.I. 219 at p. 12). The surrounding claim language therefore compels the conclusion that the connection is between the subscriber unit and the cellular wireless network. A connection within the subscriber unit itself cannot be a connection "with the cellular wireless network." In addition, the specification describes a logical connection as a connection between peer nodes at the network layer. ('244 patent, col. 4, ll. 5-18).

The Court does not agree that the prosecution history limited the claim as Defendants suggest. Defendants made the same argument at the original claim construction proceeding. My response now is the same: "The examiner's statement provides only a possible example for the definition of the disputed phrase. This is not sufficient to put the inventor on notice that the invention had been limited to only spoofing, nor is it specific enough to restrict the claim." (D.I. 219 at pp. 13-14).

---

[3] In reaching this conclusion, the Court does not rely on the definitions proposed in the parallel IPR proceeding.

8

2. "assigned physical channels"

    a. *Plaintiffs' proposed construction*: channels available for the subscriber unit to select for use

    b. *Defendants' proposed construction*: physical channels available for the subscriber unit to use

    c. *Court's construction*: channels available for the subscriber unit to select a subset for use

The Court previously construed "assigned physical channels" as "physical channels available for the subscriber unit to select for use." (D.I. 219 at p. 14). Defendants proposed the construction the Court adopted. (*Id.*). Defendants now argue that the construction is confusing. (D.I. 407 at 44). Defendants maintain that the confusing construction opened the door for Plaintiffs' expert, Dr. Cooklev, to make claim construction arguments to the jury at the ZTE trial. (*Id.* at 42-43). They note that Dr. Cooklev redefined the claim by testifying that "select for use" means selecting some but not all channels. (*Id.* at 42). ZTE objected to Dr. Cooklev arguing claim construction—an issue of law—to the jury. (*Id.*). The Court sustained the objection and struck the testimony.[4] (*Id.*). Defendants argue that Plaintiffs' proposed construction is just as objectionable now as it was when Dr. Cooklev argued it to the jury. (*Id.* at 45). Defendants propose removing "select for" in order to simplify the construction. (*Id.* at 44). They contend that such an alteration would have no effect on the meaning. (*Id.*). Defendants also maintain that the specification does not require that the subscriber unit select a subset of channels from a larger set. (*Id.* at 46).

Defendants further request that the Court re-construe the claim language surrounding "assigned physical channels." (*Id.* at 43-44). The Court construed "maintain a communication

---

[4] Counsel should advise their experts that giving testimony about what a claim construction "means" is improper. Counsel should be aware that if this happens again, I will give due consideration to the possibility of sanctions.

9

session with the cellular wireless network in an absence of the plurality of assigned physical channels" as "maintain a logical connection with the wireless network when none of the plurality of [physical channels available for the subscriber unit to select for use] are in use by the subscriber unit." (D.I. 219 at p. 12). Defendants propose that "when none of . . . are in use" be replaced with the original claim language, "in an absence of." (D.I. 407 at 44). They argue that "absence" is an ordinary word any juror would understand, and reverting to the claim language would simplify the construction. (*Id.*).

Plaintiffs argue that Defendants should not be allowed to argue for a new construction when the Court adopted the construction Defendants proposed. (*Id.* at 38). Plaintiffs further argue that Defendants' new construction would eliminate the requirement that the subscriber unit select the channels, as it would permit the network to dictate the selection. (*Id.* at 39). Plaintiffs note that in the IPR proceeding, Plaintiffs expressly disclaimed systems in which the subscriber unit does not select the channels for use. (*Id.* at 46).

Plaintiffs also argue that the subscriber unit selects a subset of available channels. (*Id.* at 40). They note that the specification describes a bandwidth management function that allocates and deallocates radio channels "as required." (*Id.* at 39). The specification also states that the "bandwidth management function may make only a certain number of channels 30 available at any time. A subset of the available channels 30 is selected."[5] (*Id.* at 40 (quoting '244 patent, col. 7, ll. 24-27)). Plaintiffs also note that Defendants argued that "a subset of those available channels are selected for use" in the original claim construction briefing. (*Id.* at 40 (quoting D.I. 122 at 85)).

---

[5] Defendants argue that this language is not in the section describing Figure 6, to which Plaintiffs limited the invention during the IPR. (D.I. 407 at 49 n.8). However, the description of Figure 6 includes the "bandwidth management 134 as described earlier." ('244 patent, col. 9, ll. 38-39). The quoted language is an earlier description of the bandwidth management function.

10

The Court agrees that Defendants' construction would eliminate the requirement that the subscriber unit, and not the network, select channels for use. The specification describes a subscriber unit "of the present invention" which selects channels for use. For example, it describes the subscriber unit's bandwidth management function "dynamically assigning" radio channels. ('244 patent, col. 10, l. 1). It also notes that the bandwidth management function deallocates channels when no data is present. ('244 patent, col. 10, ll. 34-43). Plaintiffs confirmed in the IPR that they disavowed any embodiments where the subscriber unit did not select the channels for use. (D.I. 410, Ex. V at p. 15).

The Court finds that the subscriber unit must select a subset of available channels. As noted above, this requirement is found in the description to which Plaintiffs limited the invention. ('244 patent, col. 7, ll. 24-27). Plaintiff limited the invention to Figure 6, a subscriber unit "of the present invention." (D.I. 410, Ex. V at pp. 14-15). The description of Figure 6 includes the "bandwidth management 134 as described earlier." ('244 patent, col. 9, ll. 38-39). The earlier description of the bandwidth management function states that "[a] subset of the available channels 30 is selected . . . ."

In addition, Defendants in the original claim construction proceeding argued that a subset of channels must be selected. The specification explains that the bandwidth management function is responsible for allocating and deallocating channels as required. ('244 patent, col. 9, ll. 64-66). Defendants urged that "allocated" means that "a subset of those available channels is selected for use." (D.I. 122 at 85). Defendants' argument that this interpretation is objectionable because the Court struck Dr. Cooklev's testimony at the ZTE trial misunderstands the Court's ruling. The testimony was improper because Dr. Cooklev was arguing a question of law to the jury. It was not that the substance of the argument was necessarily objectionable, it

11

was that the argument was being made at all. The Court finds that the subscriber unit must select a subset of channels for use, but neither proposed construction captures that requirement. The Court will therefore define "assigned physical channels" as "channels available for the subscriber unit to select a subset for use."

The Court will not further construe the claim language surrounding "assigned physical channels" for two reasons. First, Defendants moved for additional claim construction on three specific terms, including "assigned physical channels." (D.I. 385). The Court granted the motion in part, but did not give leave to argue additional claim construction for other terms. (D.I. 396). Defendants' request to re-construe terms that the Court did not give leave to argue is procedurally improper.

Second, the Court does not agree that the "when none of the . . . are in use" language is "very complex." (*See* D.I. 407 at 44). While it is true that "absence" is not a term of art, it has a specific meaning within the context of the claim. "Absence" in general usage means "[t]he state of being absent or away from a place."[6] The claims do not contemplate that the channels go away. One of the purposes of maintaining a logical connection is to eliminate "the overhead associated with having to set up an end to end connection each time that data needs to be transferred." ('244 patent, col. 4, ll. 20-22). In other words, the purpose is to make it possible to more efficiently reestablish a physical connection that had previously been dropped. If "absence" meant that the channels were gone entirely, the subscriber unit could not reconnect. The Court will therefore not re-construe the "when none of the . . . are in use" language.

## B. The '151 Patent

Claim 1 of the '151 patent is representative and reads:

---

[6] "absence, n." OED ONLINE, http://www.oed.com/view/Entry/645 (last visited March 02, 2015).

12

A method for utilizing channel assignment information for an uplink shared channel or a downlink shared channel, the method comprising:

a wireless transmit/receive unit (WTRU) receiving downlink control information including downlink or uplink channel assignment information via *a same physical downlink control channel, both downlink channel assignment information and uplink channel assignment information being received via the same physical downlink control channel*;

the WTRU determining whether the downlink control information is intended for the WTRU based on WTRU identity (ID)-masked cyclic redundancy check (CRC) parity bits, and if so determining whether the channel assignment information is for assigning radio resources for the uplink shared channel or the downlink shared channel; and

the WTRU utilizing the radio resources for the uplink shared channel or the downlink shared channel.

(emphasis added).

1. "a same physical downlink control channel"

    a. *Plaintiffs' proposed construction*: at least one same physical downlink control channel

    b. *Defendants' proposed construction*: one particular same physical downlink control channel

    c. *Court's construction*: one physical downlink control channel

2. "both downlink channel assignment information and uplink channel assignment information being received via the same physical downlink control channel"

    a. *Plaintiffs' proposed construction*: both downlink channel assignment information and uplink channel assignment information will be received via the at least one same physical downlink control channel

    b. *Defendants' proposed construction*: the WTRU receiving both downlink channel assignment information and uplink channel assignment information via that particular same physical downlink control channel

    c. *Court's construction*: both downlink channel assignment information and uplink channel assignment information being received via the one physical downlink control channel

The claim construction issues with respect to these terms are the same, and the parties argued them together, so the Court will address them together. The parties argue past each other on several issues, but ultimately appear to agree that there can be multiple control channels and that only one is used each time the claimed method is performed. (Tr. 112, 114-15). The dispute boils down to whether each control channel needs to carry both downlink channel assignment information and uplink channel assignment information.

Defendants argue that the claim requires that each channel carry both uplink and downlink channel assignment information. (D.I. 485 at 18). Defendants argue that the claim language makes clear that "both" types of information must be received by the "same" channel. (*Id.* at 19). Defendants also argue that the prosecution history supports their construction. (*Id.* at 21). Applicants added "via the same physical downlink control channel" to overcome a prior art rejection. (*Id.* at 22). The examiner allowed the amended claim in part because "[t]he prior arts fail to disclose the control data for allocating the uplink resource and the control data for allocating the downlink resource are transmitted via the same physical downlink control channel ...." (D.I. 486, Ex. H at 80). Defendants note that in the ITC, Plaintiffs argued that "whenever downlink CAI [channel assignment information] is received or uplink CAI is received, both must be received on the same physical downlink control channel." (D.I. 485 at 24 (quoting D.I. 488, Ex. M at 10)).

Plaintiffs argue that the control channel carries both downlink assignment information and uplink assignment information over time, but need only carry one or the other each time the claimed method step is performed. (*Id.* at 30). Plaintiffs argue that a "channel" is a "radio resource," and that a radio resource carries both uplink assignment information and downlink

14

assignment information over time.[7] (Tr. at 113). The parties agreed to adopt the Court's previous construction of "same physical downlink control channel" as "channel used only for transfer of downlink control information that occupies a same radio resource." (D.I. 485 at 12). Plaintiffs' understanding appears to be that the Court's construction of "same . . . channel" is that "[i]t occupies a same radio resource." (Tr. at 135). Therefore, "there can be more than one such channel that occupies a same radio resource." (*Id.*). Plaintiffs argue that multiple channels travel over the radio resource, each of which need only contain uplink assignment information or downlink assignment information. (*Id.* at 136).

In light of these arguments and for the sake of clarity, the Court finds it necessary to revise its previous construction of "same physical downlink control channel." The revised construction is "channel used only for transfer of downlink control information and which occupies one radio resource." The Court notes that a channel occupies a radio resource, but it is not itself a radio resource.

With respect to the terms at issue, the Court finds that the claim language and prosecution history support a construction requiring the control channel to carry both uplink channel assignment information and downlink channel assignment information. Neither proposed construction captures that requirement or provides guidance to the jury about the crux of the dispute. The Court will therefore define "a same physical downlink control channel" as "one physical downlink control channel."[8] The Court will define "both downlink channel assignment information and uplink channel assignment information being received via the same physical

---

[7] The Court notes that this position is similar to the construction the Court rejected in the original *Markman*, "a radio resource used to transmit uplink and/or downlink channel assignment information." (*See* D.I. 122 at 51).

[8] The Court has considered the argument that "a" normally means "one or more." (D.I. 485 at 13). It seems to me that what is really being construed is "same," not "a."

15

downlink control channel" as "both downlink channel assignment information and uplink channel assignment information being received via the one physical downlink control channel."

## IV.   CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.