IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERDIGITAL COMMUNICATIONS, INC.,
a Delaware corporation, INTERDIGITAL
TECHNOLOGY CORPORATION, a Delaware
corporation, IPR LICENSING, INC., a
Delaware corporation, and INTERDIGITAL
HOLDINGS, INC., a Delaware corporation,

       Plaintiffs

          v.

ZTE CORPORATION, a Chinese corporation,
and ZTE (USA) INC., a New Jersey
corporation,

       Defendants.

C.A. No.  13-009-RGA

MEMORANDUM OPINION

Neal C. Belgam, Esq., Clarissa R. Chenoweth, Esq., Smith Katzenstein & Jenkins LLP,
Wilmington, DE; Ron E. Shulman, Esq., Latham & Watkins LLP, Menlo Park, CA; Maximilian
A. Grant, Esq., Bert C. Reiser, Esq., Jonathan D. Link, Esq., Latham & Watkins LLP,
Washington, D.C.; Julie M. Holloway, Esq., Latham & Watkins LLP, San Francisco, CA; David
S. Steuer, Esq., Michael B. Levin, Esq., Maura L. Rees, Esq., Wilson Sonsini Goodrich &
Rosati, Palo Alto, CA, attorneys for Plaintiffs InterDigital Communications, Inc., InterDigital
Technology Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc.

Kelly E. Farnan, Esq., Travis S. Hunter, Esq., Richards, Layton & Finger, P.A.,
Wilmington, DE; Ralph J. Gabric, Esq., Charles M. McMahon, Esq., Mircea A. Tipescu, Esq.,
Brian A. Jones, Esq., Hersh H. Mehta, Esq., Brinks Gilson & Lione, Chicago, IL; Jay H. Reiziss,
Esq., Brinks Gilson & Lione, Washington, D.C., attorneys for Defendants ZTE Corporation and
ZTE (USA) Inc.

March 18, 2016

ANDREWS, U.S. DISTRICT JUDGE:

Currently before the Court is Defendants ZTE Corporation and ZTE (USA) Inc.'s
(collectively, "ZTE") renewed motion for judgment as a matter of law, or, in the alternative, for
a new trial. (D.I. 465). The matter has been fully briefed. (D.I. 466, 471, 480).

For the reasons set forth herein, ZTE's renewed motion for judgment as a matter of law,
or, in the alternative, for a new trial (D.I. 465) is **DENIED** with respect to the '966 and '847
patents. Decision on the motion is **POSTPONED** with respect to the '244 patent.

## BACKGROUND

On January 2, 2013, InterDigital Communications, Inc., InterDigital Technology
Corporation, IPR Licensing, Inc., and InterDigital Holdings, Inc. (collectively, "InterDigital")
filed this patent infringement action. (D.I. 1). The Court held a six-day jury trial on October 20,
2014 through October 27, 2014. InterDigital alleged that ZTE infringed U.S. Patent Nos.
7,190,966 ("the '966 patent"), 7,286,847 ("the '847 patent"), 8,380,244 ("the '244 patent"), and
7,941,151 ("the '151 patent"). The Court declared a mistrial as to the '151 patent on October 22,
2014. (D.I. 444 at 680). The jury found all asserted claims of the remaining patents valid and
infringed. (D.I. 450).

After a second jury trial, the Court entered a judgment based on the jury verdict against
Plaintiffs on the '151 patent. (D.I. 543)

Meanwhile, the PTAB invalidated all claims of the '244 patent. (D.I. 570, citing D.I.
557). Plaintiffs have appealed that determination to the Federal Circuit, where it is now pending.
IPR Licensing, Inc. v. ZTE Corp., No. 16-1374. Appellant's principal brief is due April 29,
2016.

## LEGAL STANDARD

### A. Judgment as a Matter of Law

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. FED. R. CIV. P. 50(a)(1). "Entry of judgment as a matter of law is a 'sparingly' invoked remedy, 'granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted).

"To prevail on a renewed motion for JMOL following a jury trial, a party must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (alterations in original). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).

In assessing the sufficiency of the evidence, the Court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991). The Court may "not determine the credibility of the witnesses [nor] substitute its choice for that of the jury between conflicting elements in the evidence." *Perkin-Elmer Corp.*, 732 F.2d at 893. Rather, the Court must determine whether the evidence supports

3

the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); *Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could properly have found its verdict"); 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party.").

Where the moving party bears the burden of proof, the Third Circuit applies a different standard. This standard "'requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect.'" *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976) (quoting *Mihalchak v. Am. Dredging Co.*, 266 F.2d 875, 877 (3d Cir. 1959)). The Court "'must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding.'" *Fireman's Fund Ins. Co.*, 540 F.2d at 1171 (quoting *Mihalchak*, 266 F.2d at 877).

## B. Motion for a New Trial

Federal Rule of Civil Procedure 59(a)(1)(A) provides, in pertinent part: "The court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or

4

(4) the jury's verdict was facially inconsistent. *See Zarow–Smith v. New Jersey Transit Rail Operations, Inc.*, 953 F.Supp. 581, 584-85 (D.N.J. 1997).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir.1993) (reviewing district court's grant or denial of new trial motion under the "abuse of discretion" standard). Although the standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law—in that the Court need not view the evidence in the light most favorable to the verdict winner—a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352–53.

## PATENTS-IN-SUIT

The '966 and '847 "same code" patents are entitled "method and apparatus for performing an access procedure." These patents claim a device and procedure for establishing a communication session between a cellphone and a cellular network. (D.I. 443 at p. 120). At a very general level, the technology involves a cellphone sending out short signals (also referred to as "preambles") at increasing power until it receives an indication from a base station. (*Id.* at pp. 124-25). Once the phone receives the indication, it transmits a message requesting a channel over which to establish a connection. (*Id.* at p. 125). The successively transmitted signals are generated using the "same code" as the message. (*Id.*). As discussed below, the central dispute with respect to these patents is whether the preambles and messages transmitted by the accused devices are generated using a "same code."

5

The '244 "logical connection" patent is entitled "dual mode unit for short range, high rate and long range, lower rate data communications." The patent claims a device (the "subscriber unit") configured to connect to a Wi-Fi network when one is available, and to otherwise communicate over a cellular network, as well as a method for using the device. The subscriber unit establishes a connection with a cellular network using what are referred to as "physical channels." (D.I. 443 at p. 143). If a Wi-Fi connection becomes available, the subscriber unit switches over to the wireless network. (*Id.* at p. 142). When switching over, the subscriber unit drops the physical channels it had used to communicate over the cellular network. (*Id.* at p. 147). It continues to maintain a "logical connection" to the network, which makes it easier to switch back to the cellular network if the Wi-Fi network becomes unavailable. (*Id.* at pp. 146-147).

There are two limitations at issue here. First, the "available for use" limitation requires that the physical channels over which the subscriber unit communicates with the base station on the cellular network be available for use even when the subscriber unit is communicating over Wi-Fi. (D.I. 466 at p. 7). Second, as noted above, the patent requires that the subscriber unit maintain a "logical connection" with a cellular network that the phone had used to communicate before switching to Wi-Fi. (D.I. 443 at p. 146).

## ANALYSIS

### A.  JMOL of Non-Infringement

#### 1.  The '966 and '847 "Same Code" Patents

ZTE argues that it is entitled to judgment as a matter of law on the "same code" patents because InterDigital did not introduce substantial evidence to show that ZTE's phones generate both the successively transmitted signals and the message using the same code. (D.I. 466 at p.

3). ZTE maintains that Dr. Jackson, InterDigital's infringement expert, admitted on cross-examination that the preamble scrambling code and the message scrambling code are different codes. (*Id.*). ZTE cites the following testimony as his admission: "The standard gives you the 4,096 [chips for the preamble] and the 38,400 [chips for the message], but I'm not aware of any device that adds them together to the 42,000." (*Id.*). ZTE further argues that Dr. Haas, InterDigital's invalidity expert, testified that retrospectively combining different sections of code generated from a theoretical long sequence is not a "same code." (*Id.* at pp. 3-4).

InterDigital responds that Dr. Jackson's testimony was substantial evidence to support a finding that ZTE's phones meet the "same code" requirement. (D.I. 471 at pp. 3-4). Dr. Jackson testified that the preambles are always generated using the first 4,096 chips of $C_{long,1,n}$ and the messages are always generated using the next 38,400 chips of that same code. (*Id.* at p. 3). Even if one believes that Dr. Jackson's "admission" on cross-examination contradicts that testimony, InterDigital argues that the jury is entitled to credit whatever portions of a witness's testimony it chooses. (*Id.* at p. 4).

InterDigital also argues that Dr. Jackson's testimony does not contradict Dr. Haas's testimony. (*Id.*). Dr. Haas testified that the prior art IS-95 generated and combined random snippets of a forty-two-day long theoretical sequence. (*Id.*). Dr. Haas explained that retrospectively combining random snippets did not generate a "same code." (*Id.*). InterDigital argues that his testimony does not contradict Dr. Jackson's. (*Id.*). Dr. Haas discussed a combination of random sections of a code, not consecutive segments of one code. (*Id.*). Unlike in the prior art, the accused devices always use the first 42,496 chips of $C_{long,1,n}$. (*Id.*).

I agree that Dr. Jackson's testimony is substantial evidence from which the jury could find that ZTE's phones meet the "same code" requirement. Dr. Haas and Dr. Jackson testified about

different codes that operate differently, and it is not inconsistent to say that one code meets the "same code" requirement and the other does not. Dr. Jackson testified that the "same code" in the ZTE phones was generated as follows: "the scrambling code generator generates 4,096 chips, basically the hardware hits a pause button and it starts it up again and it runs it again for another 38,400." (D.I. 444 at 472). The jury is entitled to rely on that and related testimony to find that the ZTE phones meet the "same code" limitation. I do not think it is inconsistent to say that retroactively combining random snippets of a theoretical code, which combinations would be different each time, is not a "same code." The jury is presumed to have considered all of the evidence, assessed the credibility of the competing experts, and given the evidence whatever weight the jury felt appropriate. The jury had substantial evidence that it found credible, and I will not disrupt its findings.

ZTE also argues that there is not substantial evidence that its phones satisfy the "synchronize to a/the pilot signal" limitations of the '847 patent. (D.I. 466 at p. 5). ZTE maintains that Dr. Jackson provided only conclusory testimony about those limitations, which does not constitute substantial evidence to support the jury's findings. (*Id.* at p. 6).

InterDigital responds that ZTE did not dispute Dr. Jackson's opinion that the phones meet the "pilot signal" limitations. (D.I. 471 at p. 7). It notes that the Federal Circuit has held, "The responsibility for challenging the factual underpinnings of the testimony fell squarely on [the defendant] during cross-examination." (*Id.* (quoting *Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1575 (Fed. Cir. 1991))).

I agree with Interdigital. ZTE, of course, does not have the burden of proving non-infringement, but it seems to me that ZTE should have challenged Dr. Jackson's testimony if ZTE believed it lacked support. Dr. Jackson explained his analysis and testified that, based on

that analysis, he found that the accused devices met the "pilot signal" limitations. (*See* D.I. 471 at pp. 6-7). I think his unchallenged testimony constitutes substantial evidence to support the jury's findings.

### 2. The '244 "Logical Connection" Patent

In view of the doubt as to validity of this patent, I believe it makes sense to postpone resolution of the JMOL until the Federal Circuit rules. Thus, rather than ruling on this now, I am going to postpone resolution of this portion of the motion.

### B. New Trial

### 1. The '966 and '847 "Same Code" Patents

ZTE argues that the jury's validity and infringement verdicts are inconsistent for the reasons discussed above with respect to the "same code." (D.I. 466 at p. 13). ZTE maintains that Dr. Jackson testified that retrospectively combining two different sections of a code is a "same code," but Dr. Haas testified that it is not. (*Id.* at pp. 13-14). ZTE contends that if its phones use a "same code," then so do prior art phones. (*Id.* at p. 1). Therefore, if the patents are infringed, they cannot be valid.

InterDigital responds that the verdicts are not inconsistent for the same reasons judgment as a matter of law is not appropriate. (D.I. 471 at p. 11). That is to say, the "same code" in the accused devices is a continuation of a single code (*i.e.*, the first 4,096 chips of $C_{long,1,n}$ for the preamble and the next 38,400 chips for the message). (*Id.* at p. 4). The prior art codes, on the other hand, are retroactively combined random snippets of a theoretical sequence. (*Id.*). InterDigital maintains that the accused devices never use a collection of random snippets as the "same code," so validity and infringement are not inconsistent. (*Id.*).

I agree with InterDigital. For the reasons discussed above, the jury had substantial evidence from which to find that the ZTE phones met the "same code" requirement and the prior art phones did not. The infringement and invalidity verdicts are therefore not inconsistent.

### 2.   Use of Licensing Evidence

ZTE argues that a new trial is warranted due to InterDigital's use of prejudicial licensing evidence. (D.I. 466 at p. 18). Before trial, I ruled that InterDigital could refer to evidence of its licensing activities as context testimony. (C.A. 13-10 D.I. 339 at 2-3). ZTE argues that InterDigital exceeded the scope of that ruling and repeatedly argued to the jury that a majority of the industry had licensed InterDigital's patents. (D.I. 466 at p. 18). ZTE contends that such evidence caused the jurors to infer that the patents were valid and infringed. (*Id.*).

InterDigital argues that its references to licensing activities were within the scope of my motion *in limine* ruling. (D.I. 471 at p. 17). It maintains that the testimony and argument did not specify whether there were any licenses to the patents-in-suit or which companies took licenses. (*Id.* at p. 18). InterDigital also contends that ZTE's objections are untimely. (*Id.* at p. 17).

I do not agree that the objection is untimely, as ZTE preserved it by objecting to the testimony in its motion *in limine*. Nevertheless, I do not think that ZTE has shown that it is "reasonably probable that the verdict was influenced by prejudicial statements." *Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1182 (Fed. Cir. 2002) (applying Third Circuit law). While I think InterDigital probably exceeded the scope of my ruling, I do not think the licensing references were sufficiently prejudicial to warrant a new trial.

### 3.  Closing Arguments

ZTE argues that a new trial is warranted by InterDigital's improper attack on the credibility of ZTE's witnesses. (D.I. 466 at p. 19). ZTE argues that InterDigital used a misleading impeachment "scoreboard" in closing argument. (*Id.*). ZTE maintains that many of the alleged impeachments identified on the scoreboard were actually consistent statements. (*Id.*). ZTE argues that, because InterDigital emphasized the scoreboard as a measure of credibility, it is reasonably probable that it improperly influenced the jury's verdict. (*Id.* at 20).

InterDigital argues that ZTE's objection is untimely. (D.I. 471 at pp. 18-19). In addition, InterDigital argues that even if the impeachment argument in closing was improper, any prejudice was cured by the jury instructions. (*Id.* at p. 19). InterDigital notes that I instructed the jury that it was the sole judge of credibility. (*Id.*).

ZTE's objection is not untimely, as it objected to the impeachment scoreboard prior to closing argument. (D.I. 448 at p. 1681). I do not, however, think that it warrants a new trial. The jury was instructed that it was the sole judge of credibility and that arguments made by attorneys were not evidence. (D.I. 535). The jury was entitled to determine for itself whether the alleged impeachments showed inconsistent testimony. I do not think it is reasonably probable that InterDigital's demonstrative improperly influenced the jury's verdict.

### CONCLUSION

For the reasons set forth above, ZTE's renewed motion for judgment as a matter of law, or, in the alternative, for a new trial (D.I. 465) is **DENIED** with respect to the '966 and '847 patents. Decision on the motion is postponed with respect to the '244 patent until decision by the Federal Circuit. An appropriate order will be entered.